# Ross, Appellant, *v.* Garey.

In a trial of the right of property, the execution levied is a necessary part of the evidence. as showing the plaintiff's right to proceed against the property.

An affidavit in support of a motion for a new trial is not of record, unless made so by a bill of exceptions.

When a circuit judge takes a case under advisement in vacation, in pursuance of the statute, that fact should appear by an entry on the record.

When a judge takes a motion for a new trial under advisement in vacation, it will not suspend the judgment, unless a memorandum is entered on the record that the cause is under advisement.

On a motion for a new trial in a proceeding to try the right of property, which is brought up for review, the bill of exceptions must contain the creditor's execution.

The proceeding for the trial of the right of property taken on execution is assimilated by the statute to the action of detinue, and the *onus*, therefore, lies on the plaintiff in the execution.

IN ERROR from the circuit court of the county of Carroll.

William B. Ross having obtained judgment against Marvel M. Garey and others, for the sum of six thousand two hundred and thirty-four dollars, together with interest and costs, on the 5th day of July, 1839, in the circuit court of Carroll county, sued out an execution on the 23rd day of July, 1839, which was levied on the 5th day of September, 1839, on twenty negro slaves. Allen Garey claimed the slaves, and made affidavit, and gave bond for the trial of the right of property in the same, as the statute directs; and an issue having been made up in the case, and submitted to a jury on the 17th day of October, 1839, a verdict was found for the plaintiff in the execution, upon which the court gave judgment, to wit: that the slaves were subject to payment of the plaintiff's claim, and that he recover of the claimant the costs of the trial, &c. A motion for a new trial, on the ground that the jury found contrary to law and the evidence, was entered up on the motion docket of said court by the counsel for the claimant.

There was copied into the record a paper, which concluded as follows: "A new trial will therefore be granted, on the claimant, Garey, paying all costs up to this time, within sixty days from this date; otherwise judgment to remain, and execution to issue. Signed in vacation, November 11th, 1839.  D. O. Shattuck, Judge," &c.   The following entry was then made in the record: "Trial of the right of property, at October term, 1839.   On motion of defendant's counsel, ordered, that a new trial be granted on the payment of all costs, in sixty days; from which decision of the court the plaintiff in the execution, William B. Ross, prayed for and obtained an appeal to the High Court of Errors and Appeals; which is granted, on his entering into bond in the sum of five hundred dollars, with Jethro B. Fort as security. Received of Allen Garey twenty dollars, in full of the costs in this case, November 27th, 1839.   W. G. Herring, clerk."   The record contained a bill of exceptions, commencing thus:   "The court granted a new trial on motion of Garey, the complainant; and thereupon the plaintiff in the execution prayed for and obtained an appeal from the order of the court granting a new trial, and then gave his bond for the appeal, which was approved of by the judge on the trial.   The plaintiff in the execution then requested the presiding judge to take down and certify to the High Court of Errors and Appeals the evidence adduced on the trial before the jury, which is accordingly done, to wit:   Jones, who was introduced by the plaintiff in the execution, stated, that in the early part of the year 1836 he became the overseer for Marvel M. Garey, on a plantation lying near Middleton, in Carroll county; that the slaves in controversy were under his control as such overseer; that he knew no other claimant of them until April or May, 1839, when Marvel M. Garey and Allen Garey both informed him that Marvel M. Garey had sold the said slaves, together with the stock, &c. on the plantation, to Allen Garey; that ever since that time witness has continued to oversee said plantation and slaves under the authority of Allen Garey, and has received his wages from him alone; that one of said slaves has since been living in the family of Marvel M. Garey, in Middleton, and not under the control of witness; that the place was well stocked at the time of the transfer with provisions, farming utensils, &c.; that witness believed from the facts that the

said slaves were the property of the claimant; that Marvel M. and Allen Garey were brothers, and resided on the same places where they lived previous to April or May, 1839, in Middleton.

Also Wm. Booth, sheriff of Carroll county, who was introduced by the plaintiff in the execution, states, that Allen Garey gave him a list of the slaves, and a bond, to try the right of property, when he levied the plaintiff's execution; that the slaves were on a place which Marvel M. Garey had opened about three years ago, and had since farmed.

The witness Jones further stated that he had seen two of the slaves at Marvel M. Garey's house once or twice since the transfer; he believed they were in said Garey's possession, and they had not been under his control since the transfer. The witness Wadlington further stated, that he had seen one of the slaves at a dining at Marvel M. Garey's.

The counsel for Allen Garey then read from the records of the probate court a bill of sale, executed by Marvel M. Garey, and recorded on the 30th of April, 1839, selling to Allen Garey, for the sum of fifteen thousand dollars, the receipt of which is acknowledged, all the slaves in controversy, stock, farming utensils, and household furniture, with general warranty, &c.

Allen Garey proved that he had paid the sheriff of Carroll county the sum of eight hundred and thirty-five dollars and nine cents, in part satisfaction of judgments standing against Marvel M. Garey at the date of the said bill of sale, and which encumbered the property so sold to Allen Garey.

The claimant then introduced an agreement executed by him on the 9th of September, 1839, and acknowledged for record on the 10th of October, 1839, reciting his liabilities as first indorser for Marvel M. Garey, on notes amounting to more than twenty-two thousand dollars, also in a judgment for about thirteen hundred dollars, and in other small amounts, and reciting that having purchased of Marvel M. Garey certain parcels of land, together with the slaves, &c. mentioned in said bill of sale, in consideration thereof he bound himself to pay and discharge all of said debts. The claimant then proved by the records of the court the existence and remaining force of the above mentioned judgments, and introduced witnesses, Heslip and Wadlington, who testified as to his

5*

liability for Marvel M. Garey on different notes, amounting to more than nineteen thousand dollars.

The plaintiff in the execution then introduced a deed, duly authenticated, executed by Andrew Woods to Marvel M. Garey and William G. Doyle, dated and acknowledged on the 10th day of April, 1838, in which Woods mortgages to them certain lands and slaves, to secure them as indorsers of a promissory note for about six thousand dollars, drawn by Brown, Woods & Co. in favor of Wm. B. Ross, and indorsed by said Doyle and Garey; and also another note from Brown, Woods & Co. to said Doyle: on the margin of which are entered releases by said Garey and Doyle of all claim to the property contained therein, full satisfaction having been rendered them; the one dated on the 26th of June, 1839, and the other on the 24th of June, 1839. The plaintiff in the execution read three several deeds, duly authenticated, dated in April, 1839, from Marvel M. Garey to Allen Garey, conveying eight hundred and eighty acres of land, two hundred of which were cleared. The plaintiff in the execution then proved that said mortgage was given to secure the payment of the note on which his judgment against Marvel M. Garey and others was obtained.

After the cause was argued, the claimant's counsel asked the court to instruct the jury that fraud must be proved, and could not be presumed without proof, which instruction the court gave. The claimant's counsel further asked the court to instruct the jury that, under our statute of frauds and perjuries, it is not necessary in a conveyance of goods and chattels that possession should accompany the deed, if the same is duly proved and admitted to record; which instruction the court did not give, but charged the jury that a debtor conveying his property, retaining possession, is *prima facie* a case of fraud, but is liable to be explained away.

The jury asked the opinion of the court on the following interrogatory in writing: "The jury ask his honor for instructions, if the jury find fraud on the part of Marvel M. Garey, will the establishment of that fact subject the property conveyed to Allen Garey for the payment of the plaintiff's debt?" To which interrogatory the court replied that he must answer affirmatively. The claimant's counsel asked the court to qualify the charge, by charg-

ing the jury that Allen Garey must be *particeps* to the fraud, before the property could be subjected to the plaintiff's debt; which qualification the court refused to make.

The bill of exceptions concluded as follows: "And on granting a new trial, the counsel for plaintiff in execution excepted to the opinion of the court granting the same, and prayed an appeal, and that the evidence be taken down and certified; which is done accordingly, and is as above written.　Given under my hand and seal, this 17th day of October, 1839," &c.

It did not appear from the record that the plaintiff's execution was read to the jury, neither was it made a part of the bill of exceptions.　The affidavit in supporting the new trial was also omitted by the bill of exceptions.

W. YERGER for appellant.

The last judgment will certainly be reversed and a new trial awarded, because it does not appear that there was a legal jury. This point has been so frequently adjudicated, that no citation of authorities is needed.　Carpenter *v.* The State, 4 How. 163.

The appellant's counsel claim more than a mere reversal of the last judgment.　They insist that the first verdict was right, and the appellant is entitled to a reversal of the order granting a new trial upon it, and to judgment on it.

First. We contend that the new trial in this case was granted in vacation, and that it was erroneous, as by our statute the judge had no right, in this case, to grant it in vacation. 3 Marsh. R. 360.

It is true, the judges of the circuit court are authorized to take cases under advisement, and to deliver their opinion in vacation. It must, however, appear from the record, that the cause was taken under advisement.　Such is not the case here.　There is no record of that fact; no entry upon the minutes, nor any evidence at all of that fact.　1 How. 177; 4 How. 167; 5 How. 285; How. & Hutch. 481.

If it be admitted that the cause was correctly taken under advisement, the new trial should not have been granted, for the reasons given by the judge.

A new trial will not be granted on account of testimony which the party might have used, but did not, as he did not deem it ma-

terial, or if it is cumulative, not even if newly discovered. Graham on New Trials, 463; Meigs's Rep. 68.

It may be contended that the new trial was granted during the term, and that the bill of exceptions discloses that fact, and also that there is no reason given by the court which induced them to grant it. Discarding every thing but the bill of exceptions, we contend that the finding of the jury was correct, and should not have been set aside, because the sale to Allen Garey was fraudulent, as was shown by the evidence in the cause.

The statute of frauds of this state is nearly verbatim that of 13th Elizabeth, and declares that "every gift, grant, &c. of goods and chattels, &c. made to the intent, &c. to hinder, delay or defraud creditors, &c. shall be clearly and utterly void." The third section declares that "the act shall not extend to any estate or interest in lands, goods, &c. which shall be upon good consideration and bona fide," &c. How. & Hutch. 370.

The badges of fraud which were laid down in the celebrated Twyne's case, 3 Coke, 80, will be found to have accompanied this transaction.

In this case it will be seen that the party conveys by several different instruments *all* his property. That is an evidence of fraud. The grantor used part of them as his own.

But, in the case at bar, no consideration was shown at all, and the statute excepts only such as are upon good consideration and bona fide.

The bill of sale recites a consideration of fifteen thousand dollars. This sale is attacked as fraudulent. The rule of law is well settled, that, where an instrument is attacked for fraud, it is incumbent on the party claiming under it to show the consideration to have been bona fide and actually paid. The mere production of the notes, mentioned in the instrument as the consideration, is not sufficient. 2 Whart. Dig. 155; 3 Yerg. Rep. 478; Ibid. 504.

To avoid the conclusive evidence of fraud, resulting from the want of consideration, the claimant produced an agreement, by which he undertook, in consideration of the previous sale to him, to pay certain debts of M. M. Garey, amounting in all to about seventeen thousand dollars. This agreement was made after the

Ross, Appellant, *v.* Garey.

levy four days, and after the pretended sale six months. It is of itself conclusive against the claimant. It shows that, at the time of the pretended sale, it was made without any consideration. A subsequent agreement to pay these debts cannot render that valid which was void for the fraud and want of consideration. It is a settled rule that contracts are to be construed as from the moment of execution, and not from subsequent events; and the liabilities of purchasers are from the date of the contract. 16 Ves. 156; 15 John. 571; Newland on Con. 497.

It has been urged that, though the transaction be fraudulent, this court will not set aside the order granting the new trial, because it does not appear that any execution against M. M. Garey was levied on the property, and that such must appear from the bill of exceptions to have been the fact. The court will perceive, from examining the statutes, that the proceedings had in this case could only take place after the levy of an execution. The only questions which are submitted to the jury are, whether the property is subject to the execution or not. To make out his case, the plaintiff in the execution has only to make out such a title in the execution debtor as would subject the property to sale under execution against him. He is not bound to produce his execution. The claimant is estopped from denying that, by the bond which he gives, and by the very form of the action. The execution, the bond and affidavit, are all made part of the record, *ex necessitate*, as much as an original writ would be; for, without them, there could be no issue. How. & Hutch. 634.

As to what is the record, see 2 Chitty's Black. top of page 252.

W. G. THOMPSON for appellees.

It is conceded, in behalf of the plaintiff in error, that the judgment of the court below, upon the finding of the jury on the second trial of this cause, should be reversed, for reason manifest on the face of the record, and which cannot be controverted. The cause was tried by eleven jurors. The argument is thus narrowed down to these two questions: first—did the court make the order for a new trial, after the finding of the first jury in this cause, according to the required forms of law? and secondly—did the court err in granting a new trial after the finding of the first

Ross, Appellant, *v.* Garey.

jury? In regard to the former of these questions, the objection has been raised, by the counsel for the plaintiff in error, that the rule for a new trial was made out of term time, whereas the judge was not authorized by law to exercise such a power in vacation. We contend that the former of these propositions is not sustained by the statements contained in the record. It is true, there appears in the record a paper signed by the judge of the court, bearing date in vacation, and purporting to grant a new trial in the cause. It appears that a motion for a new trial was regularly made, in the usual mode, by the defendant in error, who was the claimant below. (See record, p. 7.) It further appears that, upon that motion, an order for a new trial was granted, from which the plaintiff prayed and obtained an appeal; of all which there is a regular entry made by the clerk, as though the proceedings were had in term time.

It is difficult to conceive how a valid objection can lie to the proceedings of the court in this matter, as they are set forth and certified in the record, or what additional mark of regularity and fulness can be required. If there should be uncertainty or insufficiency in one part of the record, the rule has already been established by this court that it shall be helped and explained by other parts of the record, and the whole shall be construed together. In the bill of exceptions, the judge certifies to a regular and complete proceeding on the subject in question; and, if any consideration be given to the paper above alluded to, according to the construction placed upon it by the opposing counsel, it only makes a contradiction that involves in uncertainty and inexplicable obscurity the whole proceeding of the court below; and, in such case, the appellate court will presume in favor of the regularity and correctness of the proceedings of the court below, when the truth and certainty of the matter cannot be gathered from the record.

The second point, which it has been proposed to argue, turns upon the question whether the sale by Marvel M. Garey to Allen Garey, of the property covered by the execution, was made bona fide and for a valuable consideration. In order to determine this question, it will only be necessary to advert briefly to the evidence embodied in the bill of exceptions. There is a regular bill of sale from Marvel M. Garey to Allen Garey, purporting to transfer the

above mentioned property for the sum of fifteen thousand dollars, bearing date more than two months before the judgment against Marvel M. Garey in favor of Ross.   There is also a written agreement, under seal, bearing date in September, 1839, by which Allen Garey obligates himself to pay and discharge various claims, amounting to more than twenty-two thousand dollars, for which he is bound, as surety for Marvel M. Garey, in consideration that Marvel M. Garey had sold to him a certain quantity of land, and also the slaves covered by the execution in favor of Ross.   It was proven by Heslip and Wadlington that Allen Garey was liable, as surety for Marvel M. Garey, for upwards of nineteen thousand dollars.

It is fair and reasonable to presume, from a'l this testimony, that Marvel M. Garey, being in embarrassed and perhaps failing circumstances, and about to have his property bound by a judgment for a considerable amount, was honestly desirous, before this or any other judgment should be rendered against him, to secure his brother, Allen Garey, in preference to his creditors generally, against the liabilities he had incurred in his behalf: and for this purpose he gives him a bill of sale for the slaves in controversy, in consideration of the sum of fifteen thousand dollars, which is explained by the other agreement referred to, dated in September, 1839, to be intended as a satisfaction and offset to the amount of fifteen thousand dollars of his brother's liabilities on his account. That the law will allow a failing debtor to dispose of property to his creditors and sureties generally, in satisfaction and discharge of their claims and liabilities, there can be no doubt; and it is equally certain that the law will not be any the less indulgent in a case between brother and brother.   No unfavorable presumption can be raised in this case for the want of a just proportion between the amount and value of the property conveyed and the consideration expressed to have been given for it.

It appears, from the bill of sale and the agreement referred to, that the sum of fifteen thousand dollars was to be allowed for the slaves in controversy, together with an inconsiderable portion of other property; and this would seem to be an adequate consideration.   There was no proof in regard to the value of the land expressed to have been conveyed; and the jury could not reason-

ably have inferred that it was so much greater in value than the remaining amount of Allen Garey's liabilities on his brother's account, after deducting the fifteen thousand dollars provided against, as to evince a fraudulent design in this transaction.

There was an attempt to throw a suspicion upon this transaction, by proving that the possession of the property did not follow the sale; but surely the attempt was not sustained. Jones, who perhaps had better opportunities than any other person of judging on this point, gave the most full and satisfactory testimony in favor of the claimants. He states that, about the time of the date of the bill of sale, he was informed of the sale by the parties, and that he ceased to manage the plantation and slaves as the property of Marvel M. Garey, but continued, from that time forward, to oversee the same under the entire direction and control of Allen Garey, and that he received his wages only from him. No additional circumstance, indicating a change of ownership and possession, could possibly be required. It is true, there was no deed produced for the land which Jones cultivated as overseer, but in the bill of exceptions it is stated that several deeds for land were adduced on the trial, bearing date about the same time with the bill of sale for the slaves and other property required in the cultivation of the land; and it is but reasonable to infer that those deeds related to the land on which the slaves were used. The only rebutting testimony on this point is, that perhaps two of the slaves were seen, on two occasions, at Marvel M. Garey's residence, after the sale and transfer. This fact is surely not worthy of any consideration in the circumstances of this case. The parties were brothers, and it was nothing strange if a servant of one should occasionally be seen at the residence of the other. The fact is not sufficiently grave to have any force in raising an inference of fraud. It is worthy of notice that the sheriff testifies that he received of Allen Garey $835, in discharge of a judgment against Marvel M. Garey, which encumbered the property embraced in the bill of sale.

We think the claimant has fully sustained his claim; and yet, whatever may have been the character of the testimony adduced by the claimant in support of his right to the property in controversy, it is contended that the plaintiff in the execution failed

entirely to make out, upon his own part, such a case before the jury as could warrant them in finding in his favor.   The trial of the right of property, under our statute, is similar in its nature to the action of detinue at common law.   See How. & Hutch.   The plaintiff in the execution must succeed, if at all, upon the strength of his own title.   The beginning and foundation of his title is a judgment, and an execution issued thereon, under which the property in controversy has been levied on.   It does not appear to this court that any such evidence of title in the plaintiff was produced before the jury.   The bill of exceptions is the only medium of communication between this court and the court below.   And the bill of exceptions does not exhibit any such judgment and execution in favor of the plaintiff; nor is any such judgment or execution therein referred to as having been produced on the trial, or its existence proven in any way whatever.   The allusions of Booth, the sheriff, in giving his testimony, to an execution, a levy, the plaintiff and defendant, &c. are entirely too loose and vague to have made unnecessary the production before the jury of the judgment and execution, and evidence of a levy under the same on the property in controversy.   The fact of the clerk's filing, with the papers composing the record of this case, a copy of such a judgment, execution and recital of a levy by the sheriff, cannot constitute them a part of the record.   The original action, and the trial of the right of property, in this case, are entirely separate and distinct causes, between different parties.   And the judgment, execution and levy, recited by the clerk, are proceedings which follow the original action, and cannot, in any way, be connected with this cause, unless made so by being produced in evidence before the jury; and it cannot appear that they were so used, except through the medium of a bill of exceptions.   Berry *v.* Hall, 1 How.; Maulding *v.* Rigby, 4 ibid.; Dunlop *v.* Monroe, 7 Cranch.

It is not certified by the judge of the court below, that the whole of the evidence adduced on the trial of this cause is spread out in the bill of exceptions; and the appellate court will presume, in every case, that the court below, having general jurisdiction, has decided correctly, unless the contrary shall be clearly and positively shown, and especially on motions for new trials on the ground that the jury gave their verdict contrary to the evidence

VOL. VII.—6

in the cause; since the court below, being cognizant of all the facts that transpire at the trial of a cause, is peculiarly qualified to determine whether the finding of the jury be in accordance with law and justice.

*Per Curiam.*

The appellant had obtained judgment against one M. M. Garey and others, and sued out his execution, which was levied on negroes, which were claimed by the appellee as his property. At October term, 1839, of the circuit court of Carrol county, an issue was made up to try the right of property, which resulted in a verdict for the appellant. A motion was made for a new trial, which it is said was taken under advisement by the judge, and granted in vacation. The second trial resulted in a verdict for the claimant, and this appeal was taken. It is conceded by the appellee's counsel, that a new trial must be granted, because on the last trial there were but eleven jurors. But the appellant's counsel contend for more than this. They insist that the first new trial was improperly granted, for which reason the judgment of the court in granting it should be reversed, and the first verdict reinstated. We must consequently determine whether the record will bear them out in this position.

The record is very defective, and no concessions are made by either party. The appellee's counsel have relied much upon grounds which may seem to be technical, but which cannot for that reason be disregarded, if their view is sustained by the record. We must lop off from the record such of the documents as do not properly belong to it, and we shall then have the case placed in its true legal aspect.

The record begins by a recital of the term and the party's names and the nature of the proceeding. Then follows the execution, which is the first item in the list of objections. It is said that it was but a matter of evidence, and should have been set out in the bill of exceptions. On the other hand, it is contended that it was not incumbent on the appellant to introduce it. We think, however, to say the least, the execution was a necessary part of the evidence. This proceeding is assimilated by the statute to the action of detinue, and the *onus* lies on the plaintiff in execution.

It was necessary that he should produce evidence of his right to proceed against the property, before the claimant could be put on his defence.  We also think that the execution should have been spread out in the bill of exceptions, and that as this was not done, it cannot, under the decisions we have heretofore made, be regarded as a part of the record.

Then come the issue, the verdict and judgment for the plaintiff in execution, and a motion for a new trial by the claimant. These we must regard as part of the record, but the affidavit in · support of the motion is improperly placed on the record, not being included in the bill of exceptions.

Next follows an opinion of the court, which it is said was delivered in vacation, which is probably true, as it bears date on the 11th of November, 1839, the court having been held in October. This decision purports to grant a new trial in the case, although the judge says that he believes the verdict was right.  For the appellee it is insisted that this opinion was not given because the case was taken under advisement, but merely because the judge wished to have his written opinion on file.   On the other hand, it is insisted that the judge took the case under advisement and granted the new trial in vacation, as it is said improperly.  If this is the decision by which the new trial was granted, it was irregular.   The statute, it is true, authorizes the circuit judges under certain circumstances to take cases under advisement, and deliver their judgments in vacation, within four months.  This is a power conferred by the statute, and the record should show that it was exercised in virtue of the grant of power.  A memorandum should be made on the record that the case was taken under advisement, otherwise it would only appear as a decision or judgment in vacation.   Without an entry of this sort, no judgment could be suspended.  If in this case the judge took time to advise, and made no order to that effect, the motion for a new trial expired with the term, and Ross had an undoubted right to enforce his judgment. As we cannot know that this case was taken under advisement, this opinion has no place on the record.

Following this opinion of the judge is a bill of exceptions, setting out the evidence, which begins by stating that the court granted a new trial, and that Ross prayed an appeal, and that the

Ross, Appellant, *v.* Garey.

evidence migh: be taken down.  After stating the evidence and the charges given, it concludes by stating that Ross excepted to the decision i. granting a new trial, and prayed an appeal, and that the evi ence be taken down, which was done, and it bears date on the 1, th day of October, 1839, which was some time previous to th date of the w itten decision, and must have been during the ume at which t'ie first verdict was rendered, it having commenced on the second Monday of October.  This sustains the construction of the recor . contended for by the appellee's counsel, that the new trial was granted at the term the verdict was rendered.  This is probably not the true history of the case, and yet it would be a dangerous precedent to consider as part of the record matters which technically do not belong to it, and which have not been placed on it by bill of exceptions.

The record of the first trial, then, consists of the issue, the verdict, the motion for a new trial, and a bill of exceptions taken to the opinion of the court in granting a new trial, all of the same term.  On this state of the case it is insisted that we should reverse the judgment granting a new trial, and give the appellant the benefit of his first verdict.  We should feel but little hesitancy in doing so, but for the defect in the bill of exceptions in omitting to set out the execution, which we regard as a material part of the appellant's evidence.  If this had been set out, the propriety of the verdict would have been apparent.  Indeed, the state of the case would not, on legal principles, have justified a different verdict.  We cannot doubt but what the execution was read; still it does not legally so appear.  This operates as a hardship on the appellant, by compelling him to re-try the case, after having obtained a verdict in his favor in accordance with the law and the evidence.  We remand the case with some degree of reluctance, inasmuch as it displays strong evidences of a contrivance which is not entitled to the favorable consideration of the law.  Subsequent investigation, however, may possibly explain away these suspicious circumstances.

New trial granted.